IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BUTTE DIVISION

| | | |
|---|---|---|
| ROBERT V. DANIELS and CONNIE DANIELS, husband and wife; and DONALD R. SMITH and KATHY SMITH, husband and wife, | ) ) ) ) ) | CAUSE NO. CV-86-45-BU-RFC |
| Plaintiffs, | ) ) | |
| GREGORY A. CHRISTIAN, et al., | ) ) | |
| Plaintiff-Intervenors, | ) ) | **FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER** |
| v. | ) ) | |
| THE ANACONDA MINERALS COMPANY, and THE ATLANTIC RICHFIELD COMPANY, | ) ) ) ) | |
| Defendants. | ) | |

Following remand from the Ninth Circuit Court of Appeals, *Doc. 381,* an evidentiary hearing was held on November 9, 2010 regarding the scope and enforceability of the release contained in the 1992 Settlement Agreement. The Intervenors, private property owners from Opportunity, Montana, were represented by J. David Slovak and Mark M. Kovacich. Defendant, Atlantic Richfield Company (ARCO), was represented by John W. Rauchway, Shannon Wells Stevenson, and Patrick M. Sullivan. Witnesses testified, exhibits were admitted, and deposition

testimony was submitted.  From the evidence received, the Court makes the following Findings of Fact and Conclusions of Law.

## FINDINGS OF FACT

1.     In the early 1900s, ARCO's predecessor installed a system of subterranean drain tiles in the area now known as Opportunity, Montana.  ARCO installed the drain tile system to lower the water table and enable residential development in the area.  ARCO maintained the drain tile system for approximately 70 years following its installation.  Exhibit D-2, pp. 1-3.

2.     In 1984, ARCO advised the residents of Opportunity it would no longer maintain the drain tile system.  Several residents of Opportunity ("Drain Tile Plaintiffs") filed a state court action against ARCO in 1986, seeking relief related to the ongoing maintenance of the drain tile system.  ARCO removed the action to this Court based on diversity of citizenship.  Exhibit D-2, p. 2.

3.     The Drain Tile Plaintiffs included a large group of Opportunity residents, defined as landowners "whose land has been affected by the operation of a drain tile system that was installed by the Anaconda Minerals Company . . ."  Exhibit I-1, p. 3. Attorneys who represented both parties in the drain tile litigation agree the Drain Tile Plaintiffs' allegations and claims for relief all concerned ARCO's duty to maintain the drain tile system.  Transcript of Evidentiary Hearing (Tr.), pp. 65, 121; Michael McKeon depo, p. 130.  The Drain Tile Plaintiffs' complaint made no reference to soil

or groundwater contamination, or to ARCO's conduct in causing soil or groundwater contamination in the area.  Exhibit I-1; Tr. 65.

4.      In 1991, the parties participated in a settlement conference, conducted by current U.S. Magistrate Jerry Lynch.  As a result of the settlement conference, the parties agreed to settle their disputes involving the drain tile system.  Tr. 77-78, 133-35.

5.      As part of the settlement, the parties agreed that Count VII of the Second Amended Complaint would be certified for prosecution as a class action claim.  This Court recognized that the parties intended to effect a class action settlement "to ensure that once the case has been dismissed with prejudice, Defendant ARCO can have no further liability for the drain tiles."  Exhibit D-2, p. 5.  This Court later certified Count VII for prosecution as a class action, defining the class to include all persons or entities served or in any way benefitted by the drain tile system which was at issue in this case.  Exhibit D-1, pp. 3-4.  The Court also approved the class action settled and entered judgment in accordance with its terms on September 10, 1992. Exhibits D-2, D-7.

6.      The Settlement Agreement contains a release of Atlantic Richfield by both the individual plaintiffs and the plaintiff class, which states:

> The Plaintiffs specifically covenant and agree that at the time the aforesaid judgment is entered, they and each representative party will individually and on behalf of the class execute a complete release of all claims against ARCO, releasing (i) all claims each of them may have

against ARCO, whether known or unknown, and (ii) all claims that may arise in the future against ARCO involving or in any way arising out of the system, provided however that said releases shall not release any claim or right to enforce the judgment entered against ARCO at any time prior to the judgment's being satisfied of record.

Exhibit D-7, at 22-23.

7.     The Settlement Agreement states that its provisions are binding on the parties' successors and assigns.  Exhibit D-7 at 23.

8.     In 2008, approximately 100 individuals who own property in and around Opportunity ("Contamination Plaintiffs") filed a lawsuit against ARCO seeking damages for ARCO's contamination of their properties.   The Contamination Plaintiffs' claims, which were filed in Montana state court, do not implicate the drain tile system or ARCO's conduct giving rise to the drain tile litigation.  Exhibit D-154.

9.     On September 2, 2008, ARCO filed a motion seeking to enjoin the Contamination Plaintiffs' claims, contending the claims were released by the settlement and final judgment entered by this Court in 1992.  *Doc. 355.*

10.     This Court ultimately denied ARCO's motion, *Doc. 374,* and ARCO appealed to the Ninth Circuit Court of Appeals.  *Doc. 375.*  The Ninth Circuit remanded the case for an evidentiary hearing, directing the Court to determine whether the release in the 1992 Settlement Agreement was intended as a specific or general release.  Additionally, if this Court were to conclude the release was intended

as a general release, the Ninth Circuit directed the Court to determine whether the release is unenforceable under state or federal law.  *Doc. 381.*

## I.     The class action settlement and final judgment approved by this Court were intended only to release the drain tile claims litigated in this case.

11.    In the drain tile litigation, the plaintiffs were represented by Greg Skakles and Michael McKeon.  ARCO was represented by Urban Roth and Tom Welsch.  Tr. 119-20, 124, 133.  ARCO did not call its lead counsel, Urban Roth, to testify at the hearing or by deposition.  ARCO also chose not to call any of its in-house representatives who participated in the drain tile litigation.

12.    The attorneys, for both ARCO and the Drain Tile Plaintiffs, agree the focus of the litigation in this case, prior to the settlement in 1992, was the Opportunity drain tile system.  Tr.  65, 121; Michael McKeon depo, p. 130.

13.    In reference to what was litigated in the *Daniels* case, Greg Skakles prepared the complaint against ARCO that set forth the charging allegations, and the specific relief sought.  Tr. 119-20.  The complaint accurately sets forth what was litigated against ARCO and what ultimately was settled–a dispute regarding the Opportunity drain tile system.  Tr. 121.  The complaint did not seek relief other than relief associated with the Opportunity drain tile system and ARCO's refusal to continue to operate and maintain the system.  Tr. 122.  The complaint included a claim for damages associated with repairing and maintaining the system, which was

pled in the alternative to injunctive relief requiring repair and maintenance of the system.  Exhibit I-1.

14.    Tom Welsch, who represented ARCO prior to the settlement, agreed the plaintiffs' claims all related to the drain tile system, and further agreed the plaintiffs' complaint did not even mention environmental contamination.  Tr. 65.

15.    In discovery, the Drain Tile Plaintiffs requested some information about water quality in the Opportunity area.  ARCO objected to the requests, taking the position that "[t]he existence and results of water quality studies or analyses of the ground water of Opportunity have no bearing whatsoever on the issues involved in this lawsuit."  Tr. 67; Exhibit I-13, pp. 8-9.

16.    The Drain Tile Plaintiffs moved to compel responses to the discovery requests, and ARCO opposed the motion.  The Court granted the Drain Tile Plaintiffs' motion as it pertained to water quality relating specifically to the drain tile system, and denied the motion as related to water quality in general.  Tr. 68-70; Exhibits D-28, D-29; See also docket entry for May 1, 1991.

17.    The Drain Tile Plaintiffs submitted expert witness disclosures which focused on the function of the drain tile system.  The disclosures did reference contamination in water within the drain tile system.  Contamination in the system was a concern because it may effect the cost of maintaining the system. Tr. 127.  The disclosures did not address harm to the Drain Tile Plaintiffs' property from pollution.

Exhibit D-45.  The experts referenced in the disclosures all testified that their work in Opportunity involved assessing the drain tile system, the costs of maintaining the system, and the consequences of a failure to maintain the system.  Jerry Gaston depo, pp. 53-4; William Locke depo, p. 15; Raymond Bozlee depo, pp. 48-50.

18.     Dr. William Locke is a geologist who consulted for the Drain Tile Plaintiffs in the drain tile litigation.  Dr. Locke testified he was hired to assess the drain tile system.  William Locke depo, p. 15.  He did not recall considering metals contamination "in the slightest" as part of his work.  William Locke depo, pp. 30-1.  Dr. Locke did recall assessing the consequences of a failure to maintain the drain tiles in Opportunity.  William Locke depo, pp. 34-5.

19.     Ray Bozlee holds a two-year AAS degree in Survey from Flathead Community College.  Ray Bozlee depo, p. 9.  Jerry Gaston of Gaston Engineering asked him to meet with Greg Skakles to gather survey information for the Opportunity drain tile system.  Ray Bozlee depo, p. 15.  After the initial mapping of the drain tile system, he entered manhole structures along the system to take water samples.  Bozlee depo, pp. 15-16.

20.     Bozlee was never asked or directed to do anything concerning property damage issues in the *Daniels* litigation, but rather to locate and map the system and then sample water to determine if the Opportunity drain tile system was a single-point source of pollution to the Clark Fork river.  He attempted to locate the underground

lines of the system, but did not concern himself with pollution.  Ray Bozlee depo, pp.

49-50.  Any analysis of heavy metals related to potential discharge issues with the

Opportunity drain tile system and the Clark Fork river.  Ray Bozlee depo, p. 52.

21.    The attorneys representing the Drain Tile Plaintiffs testified that

pollution on their clients' properties was not a concern in the drain tile litigation.  Tr.

171-72; Michael McKeon depo, pp. 85-6.  The purpose of collecting samples from

water within the drain tiles was solely to assess maintenance needs for the drain tile

system.  The primary concern with respect to contamination in the drain tile water

was fecal coliform, resulting from sewage infiltrating the system through septic tanks.

Tr. 127; Michael McKeon depo, p. 85.  No party involved in the litigation assessed

the conduct of ARCO in causing contamination in the area.

22.    Greg Skakles explained the Drain Tile Plaintiffs retained experts to do

one thing, assess the Opportunity drain tile system.  Tr. 125-26.  ARCO would not

continue to maintain the system, so the Opportunity residents would be required to

do so.  Before taking control of the system, the residents needed to assess the system,

including whether any discharges complied with environmental laws.  Tr. 126-27.

23.    The record reflects the parties engaged in contentious litigation for a

number of years, focusing on the Opportunity drain tile system and ARCO's alleged

liability to maintain the system.  At a hearing on ARCO's motion for summary

judgment, ARCO's lawyer advised the Court there was "no water quality issue here at all." Tr. 74-5; Exhibit I-15, p. 5.

24.    In 1991, the parties agreed to participate in a settlement conference as referenced above.  Prior to the settlement conference, on May 24, 1991, ARCO's attorney Tom Welsch sent a written settlement offer to the Drain Tile Plaintiffs' attorneys.  The letter described the release ARCO expected in return for payment to settle the Drain Tile Plaintiffs' claims.  ARCO's letter described the release as a "complete release," indicating ARCO would be "completely released of all claims, demands, causes of action, and obligations of whatever nature arising from or in any way connected with the system by each of the existing Plaintiffs."  Exhibit I-4, p. 3. Welsch admitted the letter did not mention a release of liability for toxic contamination on the Drain Tile Plaintiffs' property, or for any other claims unrelated to the drain tiles.  Welsch further admitted the only release proposed in the letter was a release of causes of action relating specifically to the drain tile system.  Tr. 76-7.

25.    Greg Skakles described the terms set forth in ARCO's May 24, 1991, letter.  ARCO proposed performing an engineering evaluation of the Opportunity drain tile system, funding the necessary repairs, paying legal expenses involved in initially establishing a drainage district to take over the Opportunity drain tile system, and funding future maintenance of the system.  Tr. 130-31.  The settlement offer set

forth in ARCO's letter formed the essence of the ultimate settlement reached.  Tr. 131.

26.     Mr. Skakles recalled ARCO's settlement offer expressly defining the nature of the "complete release" that would be involved in the settlement.  ARCO's definition of the "complete release" contemplated a release of all claims, demands, causes of action, and obligations of whatever nature arising from or in any way connected with the Opportunity drain tile system by each of the existing plaintiffs. Tr. 131-32; Exhibit  I-4.  The parties used and relied upon ARCO's definition of "complete release" throughout the negotiation and ultimate settlement of the *Daniels* case. Tr. 132.  ARCO's representatives never advised, either orally or in writing, that the rules were changing and that a "complete release" meant something different. The parties settled the case on the basis of the "complete release" as defined by ARCO in the May 24, 1991, letter.  Tr. 133.

27.     During the two-day settlement conference, no representative of ARCO ever advised the plaintiff group that ARCO was insisting upon a release of all claims, rather than a release of claims related to the Opportunity drain tile system.  Tr. 135. Mr. Skakles testified that if ARCO had advised the settlement required a release of all claims of any kind, whether related to the Opportunity drain tile system or not, he would not have agreed to settle and would have counseled his clients to terminate the settlement conference. Tr. 136.

28.     The parties discussed the release at the settlement conference, in terms consistent with a complete release, as defined by ARCO's May 24, 1991, letter.  The Drain Tile Plaintiffs agreed to provide a complete release of all claims connected to the Opportunity drain tile system.  Tr. 136-37.

29.     The Settlement Agreement was consistent with standard practice in Montana.   Mr. Skakles described his custom in settling cases over years of practice in Montana.  Mr. Skakles testified, "you settle what you litigate" and do not provide full and total exoneration and release to a defendant for non-asserted claims.  Tr. 118-19.

30.     Similarly, Michael McKeon indicated in 40 years of practice, he has never agreed to settle claims for which his clients received no compensation.  Michael McKeon depo, pp. 130-32.

31.     Serge Myers, a long-time Opportunity resident, testified at the hearing. Tr. 175.  Mr. Myers was a named plaintiff in the drain tile litigation, and is also one of the Contamination Plaintiffs.   At the time of the settlement conference, and throughout negotiation of the Settlement Agreement, Mr. Myers served on a committee of the Drain Tile Plaintiffs, which was formed to make settlement decisions on behalf of the group.  Tr. 177-78.  No one ever told Mr. Myers that the settlement would require him to release claims unrelated to the drain tile system.  Tr. 179-80.

32.     Following the settlement conference, the parties advised the Court a settlement had been reached and requested an order vacating the trial which was scheduled to be held later that year.  Tr. 77.  The Court issued an order on June 12, 1991, recognizing "a compromise agreement and settlement of the claims advanced by the plaintiffs' complaint has been reached among the parties."  Exhibit I-6.  The only claims advanced by the plaintiffs' complaint related to the drain tile system in Opportunity.  Exhibit I-1; Tr. 65.

33.     For the next several weeks, the parties exchanged various drafts of a written Settlement Agreement.   Mr. Skakles testified drafting the Settlement Agreement was a continuous process until it reached a point where nobody could make any more revisions.  The bottom line was that the Settlement Agreement released those claims that the Opportunity residents had against ARCO relating to the Opportunity drain tile system.  Tr. 138.

34.     The attorneys preparing the draft settlement documents cannot recall a specific discussion about the scope of the release language occurring during the drafting process.  Tr. 86-7, 141-42.  The final version of the Settlement Agreement is 27 pages long and contains extensive discussion about the drain tile claims which were litigated in the case.  The Settlement Agreement makes no reference whatsoever to property damage claims arising from contamination, or to any other claims

unrelated to the drain tiles.  Exhibit D-7; Tr. 95.  The Settlement Agreement contains

a release, which the Ninth Circuit Court of Appeals has held ambiguous.  *Doc. 381.*

35.     Under the terms of the Settlement Agreement, one cause of action

asserted by the Drain Tile Plaintiffs would be certified for class action prosecution.

On January 21, 1992, the Court certified a class which included "all persons or

entities served or in any way benefitted by the drain tile system that is at issue in this

action. . ."  The Court's order certifying the class discusses the drain tile dispute in

detail, but makes no reference to any other claims class members might have against

ARCO.  Exhibit D-1.

36.     Shortly after the Court issued its order certifying class, the parties sent

a notice of class certification to many of the class members.  The notice advised the

class members of their inclusion in the class and specifically described the claim for

which they were included as a claim "that certain language in the original deeds by

which  Anaconda  Copper  Mining  Company  first  sold  land  in  Opportunity  for

residential development imposes a perpetual maintenance obligation upon Anaconda

and its successor, Atlantic Richfield Company."  The notice advised class members

of a right to submit written comments or objections, but the notice did not reference

any claim other than the claim for ongoing maintenance of the drain tile system.

Exhibit  D-21; Tr. 92-3.

37.     On June 22, 1992, the parties sent certain members of the class a Notice of Hearing on Settlement Agreement.  Attached to the Notice was a copy of the Settlement Agreement.  The notice did not advise any member of the class that claims unrelated to the drain tile system would be compromised as part of the settlement. Exhibit D-23; Tr. 93-5.

38.     The hearing on the Settlement Agreement was held on July 13, 1992. ARCO's attorney, Tom Welsch, was the only party who appeared at the hearing.  Mr. Welsch described the Settlement Agreement to the Court, discussing only the Drain Tile Plaintiffs' claims which related to the drain tile system.  Mr. Welsch did not advise the Court of any intent to release other claims.  Exhibit I-21.  Tr. 104.

39.     On July 23, 1992, the Court issued its order approving the class action settlement.  The order discusses the Drain Tile Plaintiffs' claims relating to the drain tile system in detail, and finds the consideration paid by ARCO to be fair and reasonable in relation to those claims.  The order makes no reference to claims unrelated to the drain tile system, and at no time did the Court consider the fairness or reasonableness of releasing such claims.  Exhibit D-2.  Attorneys for both parties testified that no attempt was made to determine what other claims class members may have against ARCO.  Tr. 100-01; Michael McKeon depo, pp. 131-32.

40.     On September 10, 1992, the Court entered final judgment in accordance with the Settlement Agreement.  The final judgment, like all of the settlement

documents prepared in this case, makes no reference to environmental contamination claims, or any other claims unrelated to the drain tile system.  Exhibit D-7.

41.    Based on the evidence before it, the Court finds that the parties' intent when settling this case was to settle the claims which the Drain Tile Plaintiffs asserted, all of which related to the drain tile system. The parties did not intend to affect a broader release as argued by ARCO, which would cover not only environmental contamination claims, but any conceivable claims whatsoever.  When approving the class action settlement and entering final judgment, the Court likewise intended to adjudicate only the claims relating to the drain tile system.

## II.    The Drain Tile Plaintiffs were not aware of contamination on their properties, which gives rise to the claims in *Christian*, at the time of the settlement in 1992.

42.    Several Opportunity residents who testified at the hearing or by deposition confirmed they were not aware of contamination on their properties in 1992. Tr. 181, 208, 231; Vickie Spehar depo, pp. 31-2; James Svendsen depo, pp. 27-8; Michael Sevalstad depo, pp. 34-5.

43.    At the time he participated as a member of the settlement committee in the drain tile litigation, Serge Myers had no knowledge of pollution on his property. Mr. Myers did learn of pollution on his property many years later, in 2007, when ARCO collected soil samples on property.  Tr. 182.

44.     Carl and Penny Ryan are also long-time Opportunity residents.  Mr. Ryan testified at the hearing, and Mrs. Ryan testified by deposition.  In 1992, when the drain tile litigation settled, Mr. and Mrs. Ryan were not aware of any contamination on their property.  Tr. 231.

45.     Many years later, Carl and Penny Ryan learned of elevated levels of heavy metals, including arsenic, on their property.  The Ryans elected to assert claims against ARCO in *Christian*, to address the harm to their property caused by ARCO's pollution.  Tr. 232-34.  The Ryans did not participate in, and were not even aware of, the drain tile litigation many years earlier.  Tr. 227-28; Penny Ryan depo, pp. 25-6.

46.     ARCO presented evidence at the hearing of environmental testing performed in and around Opportunity prior to 1992.  Nothing in the evidence, however, suggests the Drain Tile Plaintiffs or Contamination Plaintiffs were aware of the contamination on their properties which gave rise to the claims asserted in *Christian* many years later.

47.     The Court finds the Drain Tile Plaintiffs who agreed to settle the drain tile litigation in 1992 had no knowledge of the claims which later gave rise to the *Christian* lawsuit.

## III.   A general release, under the circumstances of this case, would be patently unfair, unreasonable, and unconscionable.

48.     As ARCO's attorney acknowledged during the hearing, interpreting the release in the Settlement Agreement as a general release would mean that every

16

Case 2:86-cv-00045-RFC   Document 430   Filed 03/09/11   Page 17 of 26


member of the certified class discharged any claim he or she may have against ARCO, whether related to the drain tiles, toxic contamination, or any other subject matter whatsoever.  Tr. 95-6.

49.    All of the consideration which ARCO paid pursuant to the settlement related specifically to the drain tile system.  The Settlement Agreement did not provide for individual recoveries to the Drain Tile Plaintiffs.  The Settlement Agreement did include a provision under which a plaintiff could assert a damage claim upon proof of physical damage to his or her property caused directly by the drain tile system.  While some Drain Tile Plaintiffs recovered damages for harm caused directly by the drain tile system, most plaintiffs recovered no damages at all, and none of the plaintiffs recovered damages for any claim unrelated to the drain tile system.  Exhibit D-7.

50.    All of the Drain Tile Plaintiffs, including the absent class members, were represented by counsel with respect to the drain tile claims.  The settlement was fair and reasonable, only to the extent it resolved the drain tile claims.  Neither the attorneys nor the Court made any attempt to assess the value of other claims the named plaintiffs or class members might have.  A settlement extinguishing all such claims, particularly on behalf of class members who did not even participate in the litigation, in exchange for consideration relating only to the drain tile system would be patently unfair, unreasonable, and unconscionable.

**IV.    A general release, in the context of this case, could not be approved as part of a class action settlement under federal law, and would violate the plaintiffs' constitutional right to due process of law.**

51.    The drain tile class members did not receive any notice that the Settlement Agreement contemplated a release of any and all existing claims against ARCO, including claims arising out of environmental contamination.  Tr. 179, 231.

52.    Certain class members did not receive any notice whatsoever of class certification or the Settlement Agreement.  For example, Kenneth and Sharon Yates have lived at 9 Stewart Street in Opportunity, Montana, since 1982.  Tr. 204-05.  The Yates purchased their property on Contract for Deed from the Veterans Administration and have dutifully paid their property taxes since purchase.  Tr. 206.  Ken Yates knew nothing of the *Daniels* litigation involving the Opportunity drain tile system until recently.  He had no involvement with the litigation, received no notices, and never received any notice of class certification or the settlement.  Tr. 207-08.  The Yates' names do not appear on any of the mailing lists indicating to whom the notices of class certification and settlement were sent.  Exhibits D-18, D-21, D-22.

53.    Similarly, Vickie Spehar, Michael Sevalstad and Rose Ostrom, all of whom owned property in Opportunity at the time of the settlement, did not receive any notice of the class certification or settlement.  Vickie Spehar depo, pp. 12, 23; Michael Sevalstad depo, pp. 34-7; Rose Ostrom depo, pp. 32-3.  The lists identifying

where the notices of class certification and settlement were sent do not include Ms. Spehar, Mr. Sevalstad, or Ms. Ostrom.  Exhibits D-18, D-21, D-22.

54.    The class members had no knowledge that the drain tile litigation in any way implicated possible environmental contamination claims.  Tr. 177, 179.

55.    The only allegation certified for class action prosecution–Count Seven–seeks damages for breach of contract, stemming from ARCO's refusal to maintain and operate the drain tile system.  Exhibit D-2, p. 6.  These allegations bear no relationship to the contamination claims raised by the plaintiffs in *Christian.*

56.    The plaintiffs in *Christian* allege damages resulting from toxic contamination of their properties.  Exhibit D-154.  Toxic contamination of property was not an issue in the drain tile litigation, and was not considered by the Court in evaluating the reasonableness and fairness of the settlement.

57.    ARCO seeks immunity for contamination claims, and all other conceivable claims against it, which were never contemplated or addressed in the drain tile litigation.  To interpret the drain tile class release to bar unrelated claims would not satisfy the reasonableness standard required by class action precedent, or the class member's right to due process of law.

CONCLUSIONS OF LAW

I.    **The Settlement Agreement is properly construed as releasing only claims related to the Opportunity drain tile system.**

1.    A settlement agreement is a contract, and its enforceability is governed by principles of contract law. *Miller v. Fairchild Indus.*, 797 F.2d 727, 733 (9th Cir. 1986).

2.    As set forth in its March 31, 2010, Memorandum in this case, the Ninth Circuit Court of Appeals has already interpreted the release language at issue, and held the release language ambiguous. *Doc. 381.*

3.    The Court's role when interpreting a release is to give effect to the mutual intent of the parties, as it existed at the time the release was executed. *Mary J. Baker Revocable Trust v. Cenex Harvest States, Coops., Inc.*, 2007 MT 159, ¶ 21, 338 Mont. 41, 164 P.3d 851; Mont. Code Ann. § 28-3-301.   In determining the parties' mutual intent, the Court must consider evidence of the circumstances under which the release was drafted. *Mary J. Baker Revocable Trust*, ¶ 21.

4.    The Court, however, may not consider the unexpressed subjective intent of the parties regarding the release. *Energy Oils, Inc. v. Montana Power Co.,* 626 F.2d 731, 737 n.11 (9th Cir. 1980).

20

5.      Based on the evidence described above, the Court determines that the release in the Settlement Agreement at issue was not intended as a general release and was instead limited to claims relating to the Opportunity drain tile system.  ARCO's motion to enjoin certain claims pled in Montana state court in *Christian* must therefore be denied.

6.      The Court's interpretation of the release at issue is supported by the context in which the release was approved by the Court.  Because the Court was required to assess the fairness and reasonableness of the class action settlement, and the Court did not assess the value of any claims unrelated to the drain tiles, the release was necessarily understood as only addressing the drain tile claims.  *See Consolidated Edison, Inc. v. Northeast Utilities*, 332 F.Supp.2d 639, 651-53 (S.D.N.Y. 2004).

7.      The Court's interpretation is also supported by ARCO's failure to offer certain evidence regarding the intent of the release.  While objecting to any testimony from the mediator, ARCO failed to offer any evidence of communications during the settlement conference.  While both attorneys representing the Drain Tile Plaintiffs testified, along with several of the plaintiffs themselves, ARCO chose not to call its lead counsel or any of its in-house representatives who actually participated in the negotiations.  When a party offers weaker and less satisfactory evidence, but could have offered stronger and more satisfactory evidence, the evidence should be viewed

with distrust.  *See Carranze-Chaidez v. United States*, 414 F.2d 503, 505 (9th Cir.

1969).

## II.    If construed as a general release, the release at issue would be unenforceable under both Montana and federal law.

8.    Pursuant to § 28-1-1602, MCA, "[a] general release does not extend to

claims that the creditor does not know or suspect to exist in the creditor's favor at the

time of executing the release, which, if known by the creditor, must have materially

affected the creditor's settlement with the debtor."  As indicated above, the Drain Tile

Plaintiffs were not aware of the contamination giving rise to the claims later asserted

in *Christian* at the time of the settlement in 1992, and, therefore, even if the release

in the Settlement Agreement was a general release, it would not extend to the claims

in *Christian*.

9.    Under Montana law, an unconscionable release may not be enforced.

*Kelly v. Widner*, 236 Mont. 523, 527, 771 P.2d 142, 144 (1989).  "The underlying

principle of conscionability is that of doing justice under the circumstances of each

case."  *Kelly*, 236 Mont. at 528, 771 P.2d at 145.  Here, ARCO seeks to preclude an

entire community, including absent class members who never participated in this

case, and successor landowners who did not even live in Opportunity at the time of

the settlement, from asserting any claim against ARCO regardless of whether the

claim relates to the drain tile dispute litigated in this case.  Enforcing the release in

that manner would be unjust, and the Court therefore finds a general release in this case would be unconscionable and unenforceable.

10.   The deprivation of life, liberty, or property by adjudication must be preceded by notice and opportunity for hearing appropriate to the nature of the case. *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 313 (1950).

11.   Notice of a depravation must reach the parties affected and convey the required information to satisfy the principles of due process. *Mullane*, 339 U.S. at 314.

12.   Due process requires that adequate notice to the class be given of any proposed class action settlement.   Rule 23(e), F.R.Civ.P.; *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 172-77 (1974); *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 113 (2nd Cir. 2005).

13.   The settlement notice must fairly apprise the prospective class members of the proposed settlement's terms and of the options available to them in connection with the proceedings. *Wal-Mart Stores*, 396 F.3d at 113; *Officers for Justice v. Civil Service Com'n of City and County of San Francisco*, 688 F.2d 615, 624 (9th Cir. 1982).

14.   Notice of a class action settlement is adequate if it may be understood by the average class member. *Wal-Mart*, 396 F.3d at 114.  If a class action settlement notice does not include information about the proposed settlement, a class member

lacks an essential factor in the decision-making equation. *In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d 1088, 1105 (5th Cir. 1977). A generalized notice of a class action settlement which does not fairly apprise class members of how their rights are affected does not satisfy due process requirements. *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811-12 (1985); *Twigg v. Sears, Roebuck & Co.*, 153 F.3d 1222, 1226-27 (11th Cir. 1998).

15.    A party may not be bound to a judgment and/or settlement which is constitutionally infirm for lack of due process. *Epstein v. MCA, Inc.*, 179 F.3d 641, 648 (9th Cir. 1999); *Hesse v. Sprint Corp.*, 598 F.3d 581 (9th Cir. 2010); *Negrete v. Allianz Life Ins. Co. of North America*, 2010 WL 4116852 (C.D. Cal. 2010).

16.    A party's interests which were not represented or considered in prior class action litigation cannot be subsequently barred under the principles of due process. *Stephenson v. Dow Chemical Co.*, 273 F.3d 249, 261 (2nd Cir. 2001); *Hesse v. Sprint Corp.*, 598 F.3d 581 (9th Cir. 2010); *Negrete v. Allianz Life Ins. Co. of North America*, 2010 WL 4116852 (C.D. Cal. 2010).

17.    A class action release can relinquish claims which were not alleged only when the additional claims arise out of the "identical factual predicate" as the conduct at issue in the case. *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1287-88 (9th Cir. 1992).

18.     A prior release is "only . . . enforceable as to subsequent claims relying upon a legal theory different from that relied upon in the class action complaint, but depending upon the same set of facts." *Williams v. Boeing Co.*, 517 F.3d 1120, 1134 (9th Cir. 2008).

19.     A number of factors must be considered in determining the reasonableness of a proposed class action settlement, including (1) the benefit conferred on class members via the settlement, (2) the nature of the claims released, (3) whether the terms of the settlement are consistent with the public's interest, (4) whether the settlement enhances or detracts from the public's confidence in the administration of justice and the class action process, and (5) the prospect of a larger, future recovery, for the members of the class if the court rejects the proposed settlement. *Schwartz v. Dallas Cowboys Football Club, LTD*, 157 F.Supp.2d 561, 572 (E.D. Penn. 2001).

20.     While the settlement at issue in this case was fair and reasonable in relation to the drain tile claims, it would be unfair and unreasonable if construed as releasing additional claims which were never asserted or evaluated by the Court.

21.     Interpreting the release at issue in this case as a general release would be inconsistent with federal law pertaining to class action settlements, and would violate the Intervenors' right to due process of law. *Hesse v. Sprint Corp.*, 598 F.3d 581 (9th Cir. 2010).

Based upon the foregoing Findings of Fact and Conclusions of Law,

**IT IS HEREBY ORDERED** that ARCO's second motion to enforce judgment

(*Doc. 355*) is denied.

DATED this 9th day of March, 2011.

*/s/ Richard F. Cebull*_____

Richard F. Cebull

United States District Judge